# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH OF:** | ) | **FILED UNDER SEAL** |
| | ) | |
| **THE CELLULAR TELEPHONE** | ) | |
| **ASSIGNED CALL NUMBER 423-681-1771** | ) | **CASE NO. 1:21-mj- 48** |
| **INTERNATIONAL MOBILE EQUIPMENT** | ) | |
| **IDENTIFIER 354235112271238 (TT-1)** | ) | |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Rodd Watters, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 423-681-1771 with International Mobile Equipment Identity 354235112271238, with no listed subscriber, whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster NJ, 07921 (Target Telephone 1/TT-1). Target Telephone 1 is utilized by Mark DAVIS. Target Telephone 1 is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.     I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as a Special Agent with the Tennessee Bureau of Investigation, since September 15, 1998.  I have been assigned as an investigator in the field of narcotics investigations for more than twenty three (23) years.  I am currently assigned as a Task Force Officer (TFO) for the Drug Enforcement Administration (DEA) Chattanooga Resident Office.  I have been a Task Force Officer for approximately five (5) years. During my tenure as an investigator assigned to narcotics investigations, I have gained a working knowledge of narcotics trafficking methods and techniques.  My present duties include the investigation of violations of state and federal law by individuals involved in the sale and distribution of controlled substances.

4.     During my experience and tenure as a Narcotics Investigator and Task Force Officer, I have investigated and participated in the investigations of organized criminal groups violating drug trafficking laws.  As part of my official duties, I have utilized most traditional law enforcement techniques, including visual surveillance, interviewing of witnesses, the execution of search warrants, the use of cooperating witnesses, the seizure of drug evidence, the controlled purchases of drug evidence, court authorized pen registers, court authorized interceptions of wire communications, the grand jury, and undercover techniques.  I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods and general behavior of criminal groups engaged in organized criminal activity.  I have personally participated in Title III wire intercept investigations, including investigations involving large-scale drug trafficking organizations and drug traffickers.  I have received specialized training in conducting drug investigations and have attended numerous conferences and lectures featuring

government attorneys and law enforcement officials. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized groups, including the use of cellular telephones to conduct their transactions. In addition, I have participated in investigations concerning the concealment of proceeds of controlled substances, including assets, monies, bank records, and the identification of co-conspirators through the use of drug ledgers, telephone toll records, telephone bills, photographs, and financial records. These investigations have resulted in the arrest of individuals who have smuggled, received, and/or distributed controlled substances, including methamphetamine, cocaine hydrochloride, cocaine base, heroin, and marijuana, as well as the seizure of controlled substances and the proceeds of the sale of these controlled substances. I know based upon my training and experience, that narcotics traffickers and money laundering organizations routinely utilize several operational goals: first, the successful facilitation of the organization's illegal activities that consist of the transportation and distribution of controlled substances and subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been

committed, are being committed, and will be committed by Mark DAVIS. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

7.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8.      The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Mark DAVIS and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b). The investigation began in February 2021. Through this investigation, DAVIS has been identified as a distributor and source of supply of illegal narcotics to include methamphetamine/ice in Tennessee.

9.      On March 04, 2021 your affiant was provided information from a TBI/HCSO Confidential Source (CS) regarding methamphetamine/ice distribution being committed by Mark DAVIS. The CS informed your affiant that DAVIS travels to Atlanta 2-3 times a week to obtain kilogram quantities of methamphetamine/ice to distribute in Chattanooga/Hamilton County.

10.     The CS informed your affiant that DAVIS was utilizes local hotels to distribute methamphetamine/ice and meets his customers at pre-determined locations in Chattanooga. The CS informed your affiant that DAVIS utilizes telephone number (423) 681-1771 to further his distribution of the illegal narcotics. The CS also informed your affiant that DAVIS had just purchased a new white Chevrolet Z-71 pickup truck.

11. The CS also advised that he/she had contacted DAVIS and arranged the meet at the Walmart located on Gunbarrel Road in Chattanooga to purchase methamphetamine/ice.

12. The CS and the CS' vehicle were searched by TBI SA Moon and TFO Headden with negative results. The CS was fitted with a TBI monitoring/recording device capable of allowing agents to overhear the conversation during the controlled purchase. The CS was provided with $225 in TBI confidential funds to utilize in the purchase of methamphetamine/ice from DAVIS.

13. Upon completion of the above procedures, the CS was followed from this undisclosed location, directly to the Walmart. Prior to the arrival at the Walmart, surveillance was established on the parking lot in an attempt to identify DAVIS. Upon arrival at the Walmart, the CS made telephonic contact with DAVIS over telephone number (423) 681-1771 (TT-1). During this conversation the CS was directed by DAVIS to meet at the Speedway gas station located at Shallowford Road and Hickory Valley Road.

14. The CS was followed from the Walmart directly to the Speedway gas station located at 2245 Hickory Valley Road in Chattanooga Tn. Upon arrival at this location the CS was observed pulling on to the lot of the Speedway and parking next to a white Chevrolet Z-71 pickup with no registration. Your affiant had established surveillance on the lot of the gas station, one gas pump over from where the CS and DAVIS were meeting. Your affiant observed the CS meeting with DAVIS outside the vehicles.

15. DAVIS informed the CS to follow him away from the Speedway and they would travel down the street to conduct the transaction. Your affiant observed the white Chevrolet Z-71 pulling toward the exit onto Shallowford Road with the CS vehicle directly behind. While sitting at the exit waiting for traffic to clear, your affiant observed DAVIS exit his vehicle and walk back

to the CS vehicle. DAVIS was observed conducting a hand to hand transaction with the CS and based on the intercepted conversation, informed the CS that the rest of what he had was hidden under the hood of the truck and would be hard to get to.

16.     Upon completion of the transaction DAVIS and the white Chevrolet were observed turning left onto Shallowford as the CS was observed turning right. Your affiant maintained visual of the CS and followed the CS away to an undisclosed location. Upon arrival at this location the CS turned over a clear baggy with crystalline substance which appeared to be methamphetamine/ice. The CS and CS vehicle were searched for any contraband and none was located.

17.     On March 12, 2021, your affiant met with the CS at the Chattanooga RO. Upon meeting with the CS the CS was directed to place a phone call to DAVIS at telephone number (423) 681-1771 (TT-1) to arrange the purchase of methamphetamine/ice. During this phone conversation your affiant could overhear the conversation.

18.     During the conversation, the CS and DAVIS agreed to meet at the Mapco gas station at 2727 Rossville Blvd. DAVIS agreed to sell the CS one ounce of methamphetamine/ice for $425.00.

19.     Based on the above conversation, Chattanooga RO agents traveled to the area of 2727 Rossville Blvd and established surveillance around this location. The CS and the CS vehicle were searched for any contraband and none was located. The CS was fitted with a TBI monitoring/recording device capable of allowing agents to overhear the conversation during the controlled purchase. The CS was provided with $425.00 in marked TBI confidential funds to utilize in the purchase of the ounce of methamphetamine/ice.

20.     The CS was followed from the Chattanooga RO directly to the Mapco at 2727 Rossville Blvd in Chattanooga Tn. Just prior to the arrival of the CS, TFO Ben Johnson informed surveillance over the radio of the arrival of DAVIS in a charcoal gray Chrysler 300 bearing Tennessee registration 0X21W9. Upon conducting a check of this registration your affiant found this registration to be on a 2020 Chrysler 300 to GSP Transportation located at 2055 Alcoa Highway, Box V, Alcoa Tennessee. The CS arrived on the lot and surveillance observed the CS exit his/her vehicle and meet with DAVIS at the driver's door of the Chrysler 300.

21.     Through the monitoring/recording device agents overhead DAVIS direct the CS to go in and pay for $40 of gasoline for the Chrysler 300 and to use the money the CS had to purchase the ounce of methamphetamine/ice. The CS entered the Mapco and made the purchase of the gasoline and then returned back to DAVIS. Your affiant overheard the CS providing DAVIS with the marked TBI confidential funds provided for the purchase.

22.     The CS entered the passenger seat of the Chrysler 300. DAVIS then provided the CS with an ounce of methamphetamine/ice. Upon completion of the controlled purchase the CS was observed exiting the vehicle and walking back to the his/her vehicle.

23.     Your affiant followed the CS away from the meet. Other Chattanooga RO agents followed DAVIS away. Your affiant met with the CS at an undisclosed location within Chattanooga. Upon meeting with the CS, the CS turned over a clear baggy of crystalline substance believed to be methamphetamine/ice. The CS and CS vehicle were searched for any other contraband and none was located. Your affiant interviewed the CS and he/she stated that DAVIS had the CS pay for some gas for his vehicle. The CS stated that DAVIS first asked the CS to ride with him down Rossville Blvd but then sold the methamphetamine/ice to the CS while sitting in

the parking lot. The CS stated that he/she observed more methamphetamine/ice inside the Chrysler 300 being driven by DAVIS.

24.     After leaving the Mapco, = surveillance observed DAVIS meeting with an unknown white male subject at 2800 #1 East 43rd Street in Chattanooga. Based on surveillance agents training and experience it appeared that DAVIS was conducting another narcotics transaction.

25.     A subpoena to Verizon Wireless for subscriber and phone tolls was issued for the telephone number (423) 681-1771, the telephone number being utilized by DAVIS. Upon return of the requested information your affiant found that this phone number did not have a listed subscriber or address. Based on affiants training and experience it is common practice for subjects involved in the illegal narcotics business to utilize pre-paid telephones with no subscriber information in an attempt to avoid detection by law enforcement.

26.     Your Affiant believes that based upon the aforementioned probable cause, that **Mark DAVIS** is using **Target Telephone 1** to facilitate their drug trafficking activities and in the furtherance of a drug conspiracy.  I believe that obtaining the requested geo-location of **Target Target Telephone 1** through Verizon Wireless will allow investigators to locate the subject(s) utilizing the **Target Telephone 1** without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

27. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

28. Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on Verizon Wireless network or with such other reference points as may be reasonably available.

29. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell

tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

30. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

31. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

32. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or

control of Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the Target Cell Phones on Verizon Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

33.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

34.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

FURTHER AFFIANT SAYETH NAUGHT

/

/

/

/

{Signatures on Following Page}

Respectfully submitted,

Rodd Watters
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on _March 23_, 2021

HONORABLE SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | FILED UNDER SEAL |
| | ) | |
| THE CELLULAR TELEPHONE | ) | |
| ASSIGNED CALL NUMBER 423-681-1771 | ) | CASE NO. 1:21-mj- 48 |
| INTERNATIONAL MOBILE EQUIPMENT | ) | |
| IDENTIFIER 354235112271238 (TT-1) | ) | |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephones assigned call number 423-681-1771 with International Mobile Subscriber Identity "354235112271238" with no listed subscriber or address whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster NJ, 07921.

2. Records and information associated with the target telephone that are within the possession, custody, or control of Verizon Wireless: including information about the location of the cellular telephones if they are subsequently assigned a different call number.

Page 1 of 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | **FILED UNDER SEAL** |
| | ) | |
| **THE CELLULAR TELEPHONE** | ) | |
| **ASSIGNED CALL NUMBER 423-681-1771** | ) | **CASE NO. 1:21-mj-**48 |
| **INTERNATIONAL MOBILE EQUIPMENT** | ) | |
| **IDENTIFIER 354235112271238 (TT-1)** | ) | |

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

All information about the location of the **Target Telephone 1** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone 1** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless. Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target cellular phone** on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving Mark DAVIS or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

Page **2** of **2**